## United States Bankruptcy Court, Northern District of Illinois

| Name of Assigned Judge | A. Benjamin Goldgar | **CASE NO.** | 15 B 1145 |
|---|---|---|---|
| **DATE** | February 12, 2018 | **ADVERSARY NO.** | |
| **CASE TITLE** | Caesars Entertainment Operating Co., Inc. | | |
| **TITLE OF ORDER** | Order denying the motion of Whitebox Advisors, LLC for a protective order. | | |

**DOCKET ENTRY TEXT**

The motion of Whitebox Advisors, LLC, for a protective order is denied.

**[For further details see text below.]**

### STATEMENT

This contested matter in the Caesars bankruptcies is a dispute over a purported claim transfer. Currently before the court for ruling is the motion of Whitebox Advisors, LLC ("Whitebox") for entry of a protective order. Whitebox's opponent, Earl of Sandwich (Atlantic City), LLC ("Earl"), opposes the motion. For the reasons below, the motion will be denied.

### 1. Background

In September 2016, Earl filed proof of claim No. 5858 in the bankruptcy case of one of the Caesars debtors, Showboat Atlantic City Operating Co., LLC. Earl asserted a $3.6 million unsecured nonpriority claim arising from a lease termination. On January 17, 2017, the debtors' third amended joint chapter 11 plan of reorganization was confirmed. In general, the plan provides for cash distributions to holders of allowed claims in various percentages depending on the claims' classifications.

Whitebox asserts that Earl sold its claim shortly before confirmation. According to Whitebox, Earl entered into an agreement with Cowen Special Investments LLC ("Cowen") to sell the $3.6 million claim to Cowen for $2.15 million. Whitebox says the sale was negotiated in a series of emails between Earl and Cowen on January 11 and 12, 2017, and the sale was complete as of 8:34 a.m. (ET) on January 12. By noon the same day, Cowen had sold the claim to Whitebox. The sale terms were confirmed with an "email trade confirmation" describing the "trade details" of the sale. Some months later, Cowen and Whitebox entered into what

**STATEMENT**

Whitebox calls an Assignment and Release Agreement.[1]

  To notify the debtors that the Earl claim had been sold, on October 5, 2017, Whitebox filed with the court a transfer of claim form in accordance with Bankruptcy Rule 3001(e)(2), Fed. R. Bankr. P. 3001(e)(2). The form listed Whitebox as the transferee and Earl as transferor.

  Earl timely objected to the claim transfer, arguing that the claim had not in fact been sold. Earl insists that it is the true holder of the claim, not Cowen or Whitebox, and so is entitled to the distribution on account of the claim under the confirmed plan.

  When a party objects, Rule 3001(e)(2) requires a hearing to determine if the claim has indeed been transferred. The dispute over the purported transfer here is a contested matter under Bankruptcy Rule 9014. Rule 9014(c) declares that Rule 7026 – which incorporates Rule 26 of the Federal Rules of Civil Procedure, entitled "general provisions governing discovery," Fed. R. Civ. P. 26, – generally applies in contested matters. Fed. R. Bankr. P. 9014.

  Since Earl's objection, the parties have been conducting discovery. Earl has served document requests on both Whitebox and Cowen. Whitebox produced documents but sought Earl's agreement to keep some of them confidential, to be revealed only to certain people for certain purposes. At first Earl consented, and Whitebox forwarded a stipulation and agreed protective order to the court. But the proposed order would have had the court find there had been "good cause shown," and no such showing had been made.[2] The parties were advised that the order would not be entered without a motion showing good cause. They were also told to base their proposed order on the district court's model confidentiality order. Efforts to reach an agreement must then have broken down, because Whitebox has moved on its own for entry of a protective order, and Earl has objected.

  In its motion, Whitebox asks to have approximately 289 pages of documents "protect[ed] during the discovery process" from "competitors." (Reply at 4). Whitebox describes the documents as (1) the Assignment and Release Agreement; (2) communications between Whitebox and Cowen in January 2017 about the negotiation of a document related to Whitebox's purchase of the claim; (3) communications between Whitebox and Cowen in March 2017 about the claim; (4) a letter Whitebox sent to Cowen in April 2017 about the claim; and (5) a brief series of "Bloomberg chat messages" exchanged either internally at Whitebox or between

---

  [1]  The facts are surrounding the transfer are contested. This order employs Whitebox's version, not because it is necessarily correct, but to provide a context for Whitebox's motion. The exact circumstances of the transfer are not relevant to the outcome here.

  [2]  A finding of good cause for entry of a protective order is necessary even when the parties agree to its entry. *Jepson, Inc. v. Makita Elec. Works, Ltd.*, 30 F.3d 854, 858 (7th Cir. 1994).

**STATEMENT**

Whitebox and Cowen in January, February, and April of 2017. (*Id.*).

## 2. Discussion

The motion will be denied. Whitebox has not demonstrated good cause for the entry of a protective order because it has not shown either that the information it wants to protect is confidential or that the information's disclosure would result in a clearly-defined, serious injury.

The initial question is the basis for entry of any protective order. In adversary proceedings and contested matters, protective orders are authorized under Rule 26(c). *See In re Handy Andy Home Improvement Ctrs., Inc.*, 199 B.R. 376, 380 (Bankr. N.D. Ill. 1996); 10 *Collier on Bankruptcy* ¶ 9018.04 at 9018-5 (Richard Levin & Henry J. Sommer eds. 16th ed. 2017). Section 107(b) of the Bankruptcy Code and Rule 9018 also authorize protective orders. But section 107(b) concerns papers filed in bankruptcy cases, not discovery material. *Handy Andy*, 199 B.R. at 381; 2 *Collier on Bankruptcy*, *supra*, ¶ 107.01 at 107-3. The same is true of Rule 9018(2). Fed. R. Bankr. P. 9018(2) (referring to a "paper filed in a case under the Code"). Rule 9018(1) is broader, allowing an order to protect "a trade secret or other confidential research, development, or commercial information." Fed. R. Bankr. P. 9018(1). But the same phrase appears in Rule 26(c)(1)(G), Fed. R. Civ 26(c)(1)(G), which, unlike Rule 9018, expressly applies in contested matters such as this one, *see* Fed. R. Bankr. P. 9014(c).

Whitebox styles its motion for protective order a motion under section 107 and Bankruptcy Rule 9018. Because the material sought to be protected has not been filed with the court, section 107 and Rule 9018(1) are irrelevant. Because this a contested matter and the dispute arises out of discovery conducted under Rule 26,[3] Rule 9018(2) is equally irrelevant. Instead, the standards under Rule 26(c) determine whether Whitebox is entitled to entry of its proposed protective order.

Rule 26(c) confers broad discretion on a trial court to decide when a protective order is appropriate and what protection is required. *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 36 (1984). Because the federal judicial system is public, documents affecting the disposition of federal litigation are presumptively public. *In re Specht*, 622 F.3d 697, 701 (7th Cir. 2010). Though "[m]any a litigant would prefer that the subject of the case . . . be kept from the curious (including its business rivals and customers), . . . . the tradition that litigation is open to the public is of very long standing." *Global Material Techs., Inc. v. Dazheng Metal Fibre Co.*, 133 F. Supp. 3d 1079, 1084 (N.D. Ill. 2015) (internal quotation omitted). Absent a protective order, consequently, litigants may disseminate materials obtained in discovery as they see fit, *Calhoun v. City of Chi.*, 273 F.R.D. 421, 422 (N.D. Ill. 2011) (citing *Jepson, Inc. v. Makita Elec. Works,*

---

[3] Whitebox says it wants the documents "protect[ed] . . . during the discovery process." (Reply at 4). Its proposed protective order likewise refers to "materials produced or adduced in the course of discovery." (Mot., Ex. A).

-3-

**STATEMENT**

*Ltd.*, 30 F.3d 854, 858 (7th Cir. 1994)); *see also Rangel v. City of Chi.*, No. 10 C 2750, 2010 WL 3699991, at *1 (N.D. Ill. Sept. 13, 2010), and have a qualified First Amendment right to do so, *see Seattle Times*, 467 U.S. at 32.[4/]

Accordingly, the party seeking a protective order to prevent his opponent from disclosing documents obtained in litigation has the burden to show good cause for the order's entry. *Hitz Entm't Corp. v. Mosley*, No. 16 C 1199, 2017 WL 444073, at *3 (N.D. Ill. Feb. 2, 2017); *Global*, 133 F. Supp. 3d at 1084. That burden is a heavy one. *In re Fluidmaster, Inc. Water Connector Components Prods. Liab. Litig.*, No. 14 C 5696, 2016 WL 6599947, at *2 (N.D. Ill. Nov. 8, 2016). To demonstrate good cause, the movant must show that disclosure would result in a "clearly defined and serious injury." *Hitz*, 2017 WL 444073, at *3; *Global*, 133 F. Supp. 3d at 1084 (internal quotation omitted); *The Boyd Grp. (U.S.), Inc. v. D'Orazio*, No. 14 C 7751, 2015 WL 5445751, at *1 (N.D. Ill. Sept. 15, 2015); *Handy Andy*, 199 B.R. at 380. The injury must be "significant, not a mere trifle." *Global*, 133 F. Supp. 3d at 1084 (internal quotation omitted).

The movant's showing must consist of "a particular and specific demonstration of fact," *Gulf Oil Co. v. Bernard*, 452 U.S. 89, 102 n.16 (1981); *see also Global*, 133 F.3d at 1084, supported, if possible, by "affidavits and concrete examples," *Arvco Container Corp. v. Weyerhaeuser Co.*, No. 1:08-cv-548, 2009 WL 311125, at *5 (W.D. Mich. Feb. 9, 2009). "[S]tereotyped and conclusory statements," *Gulf Oil*, 452 U.S. at 102 n.16, such as "broad allegations of potential harm or competitive injury," *Global*, 133 F. Supp. 3d at 1084 (internal quotation omitted), are not enough. Neither are allegations of injury that are "speculative."

---

[4/] The Seventh Circuit has often said that discovery materials are public. *See, e.g., Citizens First Nat'l Bank of Princeton v. Cincinnati Ins. Co.*, 178 F.3d 943, 946 (7th Cir. 1999); *Jepson*, 30 F.3d at 858; *American Tel. & Tel. Co. v. Grady*, 594 F.2d 594, 596 (7th Cir. 1979). Indeed, the presumptively public nature of discovery is implicit in Rule 26(c): if discovery materials were private, a protective order would be unnecessary to prevent their disclosure. *Rangel*, 2010 WL 3699991, at *1. More recently, the Seventh Circuit seemed to call these principles into question. *See id.* at *2 (making this observation). In *Bond v. Utreras*, 585 F.3d 1061 (7th Cir. 2009), the court observed that discovery "is usually conducted in private," and "secrecy is fine at the discovery stage . . . ." *Id.* at 1074-75 (internal quotations omitted). But context matters. *Bond* concerned the right of a non-party journalist to obtain discovery materials from litigation that had ended, *Bond*, 585 F.3d at 1065, not a party's ability to disseminate them, *see Doe v. Lansal, Inc.*, No. 08 C 5983, 2012 WL 707112, at *3 (N.D. Ill. Mar. 5, 2012) (terming *Bond* "a new twist in a substantial line of cases that granted intervenors' motions to amend protective orders"). *Bond* also relied heavily on the amendment to Rule 5(d) of the Civil Rules prohibiting the filing of discovery materials, *Bond*, 585 F.3d at 1076, and the Advisory Committee Note gives "no indication that the changes in the rule were intended to make private that which had previously been public," *Rangel*, 2010 WL 3699991, at *2. *Bond* therefore does not resolve the public-private question when it involves parties rather than non-parties. *See id.* (noting that the "correct rule of law awaits definition").

-4-

**STATEMENT**

*Boyd Grp.*, 2015 WL 5445751, at *1. All doubts about whether material should be kept confidential must be resolved in favor of disclosure. *Hitz*, 2017 WL 444073, at *3; *Global*, 133 F. Supp. 3d at 1084.

Whitebox has not made the necessary showing.

*First*, it has not done enough to specify the documents in question. Its sparse motion describes the motions simply as "internal communications and certain communications and agreements between Cowen Special Investments and Whitebox Advisors." (Mot. at 4). Whitebox does supply more detail about the documents in its reply, dividing them into five categories. But the categories are so broad as to be largely uninformative:

• An "Assignment and Release Agreement negotiated and executed between Whitebox and Cowen." (Reply at 4). What the agreement concerns, apart from the transferred claim, is unclear. Whitebox describes the agreement as having been executed "pursuant to Rule 408 of the Federal Rules of Evidence" (*id.*), but what that means is anyone's guess. The evidence rules do not authorize people to enter into contracts.[5]

• Communications between Whitebox and Cowen in January 2017 concerning "the negotiation of a document related to Whitebox's purchase of the Claim from Cowen." What kind of "document" the document might be Whitebox does not explain. Nor does Whitebox explain how the document is "related to" the purchase.

• Communications between Cowen and Whitebox in March 2017 "concerning the Claim." Apart from providing a date, this description says nothing. The entire dispute on which the parties are taking discovery "concerns the claim."

• A letter from Whitebox to Cowen in April 2017 "concerning the Claim." Again, the subject matter of the letter, a letter "concerning the claim," is too broad to be meaningful or informative.

---

[5] If Whitebox means the agreement represents a settlement of some kind (since Rule 408 concerns offers and negotiations of compromise), that fact alone does little to identify the document. If Whitebox is suggesting that the agreement is confidential because Rule 408 would make it inadmissible at trial, Whitebox cites no legal authority suggesting that all inadmissible documents are automatically confidential. Rule 26(b)(1) suggests otherwise. Fed. R. Civ. P. 26(b)(1) ("Information within [the] scope of discovery need not be admissible in evidence to be discoverable."). (Because the agreement is between Whitebox and Cowen, it does not appear Rule 408 would bar its admission in any event. Rule 408 renders inadmissible evidence relating to the compromise of "the claim," Fed. R. Evid. 408(a)(1)(2), meaning the claim to be tried. Here, that claim arises out of a dispute between Whitebox and Earl, not Whitebox and Cowen.)

**STATEMENT**

• A series of "Bloomberg chat messages" between Whitebox employees or between Whitebox and Cowen in early 2017. Presumably, these are some form of email or text message. Their subject is not described.

*Second*, Whitebox has failed to demonstrate these documents are confidential. The motion asserts they "constitute confidential communications." (Mot. at 4). That is no more than a conclusion; the motion offers no facts from which the conclusion might be drawn. Whitebox likewise asserts in its reply that the documents contain "Whitebox's confidential commercial information." (Reply at 2; *see also id.* at 4). The reply then elaborates that the documents reflect Whitebox's "buying, selling, contract negotiation, and contract formation processes and strategies," as well as "contract terms and pricing information." (*Id.* at 4-5). But describing the information this way does not compel the conclusion that it is also confidential. It would have helped had Whitebox at least identified the business it is in and described its operations. But it has done neither, making it impossible to evaluate whether the information is the kind such a business would ordinarily keep confidential. Nor has Whitebox asserted that it takes any particular measures to keep the information confidential. *Cf. Andrew Corp. v. Rossi*, 180 F.R.D. 338, 341 (N.D. Ill. 1998) (accepting claim of confidentiality where movant furnished an affidavit describing in detail efforts to keep information secret).

*Third*, Whitebox has not shown that disclosure of the information would cause it harm. Whitebox says in its motion that disclosure would affect its ability "to negotiate future claims trades." (Mot. 4). On this point, as with the question of confidentiality, Whitebox elaborates somewhat in its reply, insisting that disclosure of the information would give its competitors "crucial insight into its commercial operations and strategies, including its negotiation tactics and financial bearings." (Id.; *see also id.* at 4).[6/]

But this, too, is no more than a conclusion – a "broad allegation[ ] of potential harm or competitive injury," *Global*, 133 F. Supp. 3d at 1084 (internal quotation omitted), not the "particular and specific demonstration of fact" necessary to obtain a protective order, *Gulf Oil*, 452 U.S. at 102 n. 16. Whitebox has not explained *why* disclosure of the information (assuming the documents actually contain it, something Whitebox's vague descriptions do not establish) would cause Whitebox the requisite "clearly defined and serious injury." *Hitz*, 2017 WL 444073, at *3. Whitebox has furnished no "affidavits" or "concrete examples" supporting its nebulous allegations of harm. *Arvco*, 2009 WL 311125, at *5.[7/] Because Whitebox has not seen

---

[6/] Earlier in the reply, Whitebox makes the same assertion in a different way, declaring: "If the information Whitebox seeks to protect is made public, it will provide Whitebox's competitors in all future trades with direct insight into its confidential buying, selling, contract negotiation, and contract formation processes and strategies." (*Id.* at 4).

[7/] The only declaration Whitebox submits is the sworn declaration of one its lawyers. (Reply, Ex. A). The declarant identifies the documents Whitebox wants to keep

## STATEMENT

fit to identify its business or describe the business's operations, it is unclear whether any aspect of the business might conceivably require secrecy. It is not even evident that Whitebox *has* competitors who might profit from the information. *See Andrew Corp.*, 180 F.R.D. at 342 (denying motion for protective order in part because movant failed provide the court with more than "a limited understanding of the background facts").

In short, Whitebox's bald conclusions about the confidentiality of the information and the threat of harm from its disclosure simply do not demonstrate the "good cause" necessary for entry of a protective order – especially in light of the broad categories of documents it wants to protect. *See id.* at 341-42 (refusing to enter "umbrella" protective order that would keep confidential "five extremely broad categories" of material where movant offered no more than "conclusory assertions" of "competitive harm"). Far more was necessary.

### 3. Conclusion

The motion of Whitebox Advisors, LLC, for a protective order is denied.

Dated: February 12, 2018

_____
A. Benjamin Goldgar
United States Bankruptcy Judge

---

confidential, describing them the same way the reply does. (*Id.* ¶¶ 4-5). She does not assert – even as a conclusion – that their disclosure would harm Whitebox.

-7-