**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| *In re:* <br><br> CAESARS ENTERTAINMENT <br> OPERATING COMPANY, INC., *et. al.* <br><br> Debtors. | Chapter 11 <br><br> Case No. 15-01145 (ABG) <br><br> Jointly Administered |

### MOTION FOR LEAVE TO FILE INTERLOCUTORY APPEAL
### UNDER 28 U.S.C. § 158(a)(3)

Under 28 U.S.C. § 158(a)(3), this Court has broad discretion to grant appellant leave to file an appeal from an interlocutory order by a bankruptcy court. The Bankruptcy Court in this case denied appellant's motion for a protective order on the legally erroneous basis that appellant could not invoke a provision of the Bankruptcy Code that explicitly provides for protection of the kind of commercial information at issue in this case. Absent that protective order, information that appellant disclosed in response to a discovery request may be released to the public and reach the hands of appellant's competitors. In light of the clear legal error below and the harmful consequences of that error for appellant, this Court should grant appellant's motion and hear an immediate appeal.

I. **FACTS NECESSARY TO UNDERSTAND THE QUESTION PRESENTED**

Shortly after Caesars Entertainment Operating Company, Inc., declared bankruptcy at the start of 2015, appellee Earl of Sandwich (Atlantic City), LLC ("Earl") filed a proof of claim for roughly $3.6 million against Showboat Atlantic City Operating Company, a debtor subsidiary in Caesars' chapter 11 cases. Dkt. 7791 at 1. Nearly two years later and the week before a chapter 11 plan was confirmed, Earl sold the claim to Cowen Special Investments LLC ("Cowen"),

which turned around and sold it to creditor-appellant Whitebox Advisors, LLC ("Whitebox"). *Id.* at 1-2.

When Whitebox notified the Bankruptcy Court of the claim transfer, *see* Fed. R. Bankr. P. 3001(e)(2), Earl objected. Dkt. Nos. 7471; 7550. Earl asserted that it is the true holder of the claim and that it never completed its sale of the claim to Cowen. Dkt. No. 7550.

Earl's objection spawned a contested matter, and the parties initiated discovery. Responding to Earl's requests, Whitebox produced various documents that included information surrounding its discussions, pricing arrangements, and negotiations with Cowen, as well as certain internal deliberations. Dkt. Nos. 7739, at 1 n.1; 7768. At first, Earl agreed to protect that information from being made public or shared with a third party without Whitebox's consent. Dkt. 7739, at 1-2. The parties stipulated to a proposed protective order, which they filed with the Bankruptcy Court. *Id.*

However, the Bankruptcy Court rejected the protective order, even though both parties had stipulated to it. At a hearing on January 3, 2018, at which Whitebox did not appear, the Bankruptcy Court requested that Earl submit a motion explaining why the protective order was necessary, urged the parties to adopt the district court's form protective order, and asked that any motion for a protective order be accompanied by a redline between the form protective order and the proposed protective order. Dkt. 7764, at 14-16.

Subsequently, Earl advised Whitebox that it would not submit a motion and would not agree to the court's model order, despite having consented to a similar protective order just weeks earlier. Whitebox, now moving without Earl's consent, filed a motion seeking approval of a protective order consistent with the Court's form protective order. Whitebox requested that the Bankruptcy Court adopt the protective order under one of three sources of law: 11 U.S.C. §

107(b)(1), which requires a bankruptcy court to protect commercial information; Federal Rule of Bankruptcy Procedure 9018(1), which allows the bankruptcy court to protect such information if the interests of justice so require; or Federal Rule of Civil Procedure 26(c)(1)(G), which allows the bankruptcy court to protect against harassment or oppression by limiting disclosure of such information for good cause. Dkt. Nos. 7732.

On February 12, 2018, the Bankruptcy Court denied Whitebox's motion for a protective order. The Court held that 11 U.S.C. § 107(b)(1) was inapplicable. The Court read the statute as limited to court filings and held that Whitebox could not seek the statute's protection for discovery disclosures. Dkt. 7791 at 3-5.

A timely notice of appeal and this motion for leave to file an interlocutory appeal under 28 U.S.C. § 158(a)(3) followed.[1]

## II. QUESTION PRESENTED

The Bankruptcy Code provides in 11 U.S.C. § 107(b)(1) that a Bankruptcy Court "shall," upon motion of a party to a bankruptcy case, "protect an entity with respect to a trade secret or confidential research, development, or commercial information."

The question presented here is whether the Bankruptcy Court erred in holding that statute categorically inapplicable to discovery disclosures.

## III. RELIEF SOUGHT

Whitebox respectfully requests that this Court reverse the Bankruptcy Court's decision denying Whitebox's motion for a protective order and adopt Whitebox's proposed protective

---

[1] The Bankruptcy Court need not certify the question presented in this appeal for this Court to hear Whitebox's interlocutory appeal. The sole authority necessary to hear this question is that of this Court. *See Tr. of Jartran, Inc. v. Winston & Strawn*, 208 B.R. 898, 900 (N.D. Ill. 1997) (citing *In re Jartran, Inc.*, 886 F.2d 859, 865-66 (7th Cir. 1989)).

order.  In the alternative, Whitebox respectfully requests that this Court reverse the Bankruptcy Court's order, hold that 11 U.S.C. § 107(b)(1) applies to Whitebox's request, and remand for the Bankruptcy Court to determine whether Whitebox has satisfied the conditions of that provision.

## IV. ARGUMENT

In 11 U.S.C. § 107(b)(1), Congress provided absolute protection against disclosure of trade secrets, confidential research and development, and commercial information.  The Bankruptcy Court here vitiated that congressional decision, choosing instead to apply a discretionary balancing test.  This presents an important legal issue that often arises in bankruptcy cases and requires this Court's resolution.  Furthermore, an appeal now is required to vindicate Whitebox's statutory right to a protective order.  Absent this appeal, Earl will be free to share the discovery materials—proprietary information about Whitebox's methodologies and business model—with the public.  This Court should therefore exercise its broad discretion under 28 U.S.C. § 158(a)(3) to hear this interlocutory appeal.

### A. The Bankruptcy Court Erred As A Matter Of Law in Holding Section 107(b)(1) Inapplicable.

The rules governing protective orders are different in bankruptcy than in ordinary civil litigation.  In ordinary civil actions, judges are instructed to be leery of requests to protect information from public disclosure.  Judges "carefully and skeptically review sealing requests to insure that there really is an extraordinary circumstance or compelling need." *In re Orion Pictures Corp.*, 21 F.3d 24, 27 (2d Cir. 1994).

In the bankruptcy arena, however, Congress struck a different balance. *Id.*; S. Rep. No. 95-989, at 30 (1978), *as reprinted in* 1978 U.S.C.C.A.N. 5787, 5816.  Though Congress remained concerned about public access to bankruptcy cases, *see* 11 U.S.C. § 107(a), it nonetheless chose to provide absolute protection against disclosure of certain categories of

information, namely trade secrets and confidential research and development, and commercial information. *See* 11 U.S.C. § 107(b)(1).

The plain language of § 107(b)(1) of the Bankruptcy Code requires a protective order to safeguard the trade secret information that Whitebox turned over in discovery. That statute provides in relevant part: "On request of a party in interest, the bankruptcy court *shall* . . . (1) protect an entity with respect to a trade secret or confidential research, development, or commercial information." 11 U.S.C. § 107(b)(1) (emphasis added).

As indicated by the word "shall," the statute is mandatory "on the request of a party." Whitebox, of course, made such a request. It sought a protective order as to commercial information—information that would give an unfair advantage to its competitors and that would reveal the manner in which it made business decisions—one of the categories of information expressly protected by § 107(b)(1). *See In re Orion Pictures Corp.*, 21 F.3d 24 at 27-28 (commercial information includes that "which would cause an unfair advantage to competitors by providing them information as to the commercial operations" of the objecting party); *In re Dreier LLP*, 485 B.R. 821, 823-24 (Bankr. S.D.N.Y. 2013) (sealing deposition transcript under § 107(b)(1) because excerpt "involve[d] the type of strategic decision making that could rightly be categorized as 'commercial information'"); *In re Handy Andy Home Improvement Ctrs., Inc.*, 199 B.R. 376, 382 (Bankr. N.D. Ill. 1996). No other showing is necessary for § 107(b)(1) to apply. *See In re Orion Pictures Corp.*, 21 F.3d at 27; *compare* 11 U.S.C. § 107(c)(1) (allowing protection of certain categories of information only "for cause").

The Bankruptcy Court here denied a protective order, choosing instead to apply a discretionary balancing test. The Bankruptcy Court read § 107(b)(1) as limited to "papers filed

5

in bankruptcy cases, not discovery material," Dkt. 7791, at 3, notwithstanding that the statute's plain text contains no such limitation.

The absence of such a limitation in § 107(b)(1) is a prominent omission. In the very next subsection, Congress demonstrated that it knows how to place such a limitation where it wants to do so. The neighboring subsection, § 107(b)(2), allows relief only to protect a person from matters "contained *in a paper filed in a case* under this title." 11 U.S.C. § 107(b)(2) (emphasis added); *see also* §§ 107(a) (applies by its terms only to "papers *filed in a case*") (emphasis added), 107(c)(1)(A) (limited to information "contained in a paper *filed, or to be filed, in a case* under this title") (emphasis added). Because Congress has expressly limited some provisions of the statute to filings, but declined to impose such a limitation on § 107(b)(1), the Bankruptcy Court committed legal error in holding that § 107(b)(1) was categorically inapplicable to information disclosed in discovery. *See In re A.G. Fin. Serv. Ctr., Inc.*, 395 F.3d 410, 415-16 (7th Cir. 2005) (suggesting that § 107(b)(1) would shield a debtor from turning over a customer list without analyzing whether the list would be filed).

Other indicators in the statute's text and structure belie the Bankruptcy Court's conclusion. First, the title of 11 U.S.C. § 107 is "[p]ublic access to papers," not "public access to filings" or even "public access to papers filed." *See also* Fed. R. Bankr. P. 5005(a)(1) (distinguishing "papers" from "papers … filed"). Section 107, in other words, governs public access to *any* documents, not just filings.

Second, if section 107(b)(1) were limited to papers actually filed in a proceeding, as the Bankruptcy Court would have it, it would be entirely subsumed within section 107(c)(1)(B), which allows a bankruptcy court to protect "[o]ther information contained in a paper" filed or to be filed in a case. As written, however, sections 107(b)(1) and 107(c)(1)(B) complement each

6

other—section 107(b)(1) applies to all papers, whether filed or not, but protects only "a trade secret or confidential research, development, or commercial information," whereas section 107(c)(1)(B) covers a narrower swath of papers (only those that have been filed or will be filed) but a broader range of content (any information that might prove problematic).

Third, the Bankruptcy Court's ruling would lead to anomalous results. Court filings implicate the public's constitutional right of access, and the Bankruptcy Code expressly singles out court filings as open to the public. *See Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 597-98, 603 (1978); 11 U.S.C. § 107(a). But Congress made clear that even court filings must be shielded from the public's view when commercial information is implicated. *See* 11 U.S.C. § 107(b)(1). Per the Bankruptcy Court's reading of the statute, however, unfiled discovery material—which do not even comprise any part of the official filings in a public trial—*cannot* be protected from public view absent a much higher showing of good cause (and even then, the bankruptcy court may decline to offer protection). There is no rational explanation for why there would be greater public access to discovery materials than to court filings.

The consequences of the Bankruptcy Court's legal error are significant. The Court's error, if not corrected, will not only harm Whitebox and deprive it of its statutory right to a protective order here, but also have much wider application and harm to parties appearing before that Court. This is an important issue that arises frequently, and there is wide confusion on whether § 107(b)(1) applies to discovery materials. At least one other bankruptcy court in this district has made the same legal error as the Bankruptcy Court here. *See In re Handy Andy Home Improvement Ctrs., Inc.*, 199 B.R. at 382.

And even in this one case, the potential harm is substantial. Part of Whitebox's highly confidential business model involves purchasing and selling claims on the open market,

7

including claims in other bankruptcy cases. If information about how Whitebox negotiates, prices, and comes to own such claims is made public, Whitebox will be harmed and its competitors will gain an important advantage when negotiating with Whitebox in the future.

No appellate court will later be able to undo the damage of Whitebox's proprietary commercial information being made public. *Cf.*, *John Doe Agency v. John Doe Corp.*, 488 U.S. 1306, 1308-09 (1989) (Marshall, J., in chambers) (issuing stay in FOIA action and observing that disclosure of the documents would moot defendant's ability to appeal, thereby resulting in irreparable injury); *Providence Journal Co. v. F.B.I*, 595 F.2d 889, 890 (1st Cir. 1979) ("Once the documents are surrendered pursuant to the lower court's order, confidentiality will be lost for all time."). In other words, if the Bankruptcy Court's decision to deny Whitebox's motion for a protective order is not reviewed at this juncture, there will be no meaningful appellate review to remedy the legal error and the denial of the statutory right to a protective order.

### B. This Court Should Exercise Its Broad Discretion to Grant Whitebox Leave to File an Interlocutory Appeal.

Under 28 U.S.C. § 158(a)(3), this Court has broad discretion to accept interlocutory appeals of any sort from a bankruptcy court. *See, e.g.*, *In re Manzo*, 577 B.R. 759, 763 (N.D. Ill. 2017). The statute does not contain any prerequisites that an appeal must meet or factors that this Court must consider in deciding whether to certify this appeal. *E.g.*, *In re Auto. Prof"ls, Inc.*, 379 B.R. 746, 751 (N.D. Ill. 2007); *Tr. of Jartran, Inc. v. Winston & Strawn*, 208 B.R. 898, 900 (N.D. Ill. 1997). Requests for protective orders in cases like this one—cases that otherwise threaten a release of information that courts cannot easily rectify—are routinely heard on interlocutory appeal. *See, e.g.*, *Am. Tel. & Tel. Co. v. Grady*, 594 F.2d 594, 595-96 (7th Cir. 1978); *Illinois v. Harper & Row Publishers, Inc.*, 50 F.R.D. 37, 42 n.10 (N.D. Ill. 1969).

8

This Court should follow suit. As explained *supra*, pp. 4-7, the Bankruptcy Court's decision contravenes the clear text, structure, and logic of a federal statute. Once Whitebox's proprietary information is disclosed to the public, that harm cannot be undone. In light of its broad discretion, this Court should grant Whitebox leave to file an interlocutory appeal to vindicate its statutory right to a protective order to safeguard its sensitive commercial information.

Although 28 U.S.C. § 158(a)(3) itself provides no standards for this Court's exercise of discretion in deciding whether to allow an interlocutory appeal, some courts have invoked the standards that apply to interlocutory appeals in other contexts. In particular, some district courts have relied on the collateral order doctrine test, which allows appeals from certain orders entirely separable from and collateral to the main dispute, while others have drawn from the 28 U.S.C. § 1292(b) standards governing interlocutory appeals from non-bankruptcy civil cases. *See, e.g.*, *Collateral Control Corp. v. Deal*, 638 F.2d 1357 (5th Cir. 1981) (applying collateral order doctrine test); *Rockwell Int'l Corp. v. White Motor Corp.*, 25 B.R. 293 (N.D. Ohio 1982) (same); *In re Manzo*, 577 B.R. 759, 763 (N.D. Ill. 2017) (applying § 1292(b) test); *Wolf v. FirstMerit Bank, N.A.*, 535 B.R. 772, 775-76 (N.D. Ill. 2015) (same). The Bankruptcy Court's denial of Whitebox's motion for a protective order warrants granting permission for this appeal under either approach.

As for the first: The collateral order doctrine allows appeals from orders that, while not final, affect "claims of right separable from, and collateral to, rights asserted in the action, too important to be denied review, and too independent of the cause itself to require that appellate consideration be deferred until the whole case is adjudicated." *Cohen v. Beneficial Indus. Loan Corp.*, 337 U.S. 541, 546 (1949). This appeal fits that bill.

9

Whitebox's request for a protective order is "separable from and collateral to" the overall controversy in this case, because answering the questions presented in this appeal does not require diving into the factual debate between Whitebox and Earl over who owns the claim at issue. The request is "too important to be denied review"—if Earl discloses Whitebox's confidential information, Whitebox's competitive standing may be harmed in a way that cannot be redressed by this Court. *See In re Cont'l Illinois Sec. Litig.*, 732 F.2d 1302, 1307 (7th Cir. 1984) (order allowing release of private report subject to collateral order doctrine because "rights asserted would be lost" and "any error in releasing it would be impossible to correct"). And it is "independent of the cause itself": Adjudicating the protective order question requires a legal determination about the applicability of 11 U.S.C. § 107(b)(1). That is a separate question than the factual question whether Earl or Whitebox owns the disputed claim.

As for the second: Courts that draw on 28 U.S.C. § 1292(b) for guidance certify appeals featuring a controlling question of law, about which reasonable minds could differ, the resolution of which will speed up the litigation. *Wolf*, 535 B.R. at 775. This appeal presents just such a question. Whether 11 U.S.C. § 107(b)(1) applies to discovery in contested bankruptcy proceedings is a pure question of law. As explained *supra*, pp. 4-7, it is a question about which, at a minimum, reasonable minds could differ. And absent resolution of that question, Whitebox will be forced to divert resources and time from the focus of this litigation to attempt to preserve the confidentiality of each of the discovery documents at issue here, as well as any further discovery documents, on a piecemeal basis under the incorrect legal standard or by seeking injunctive relief. *See Baron & Budd, P.C. v. Unsecured Asbestos Claimants Comm.*, 321 B.R. 147, 157 (D.N.J. 2005).

Thus, any approach to evaluating interlocutory appeals would support this Court's granting the requested leave.

## CONCLUSION

For the foregoing reasons, the motion should be granted, and Whitebox should be permitted to file an interlocutory appeal challenging the Bankruptcy Court's denial of a protective order.

Dated: February 26, 2018

Respectfully submitted,

*/s/ Elizabeth B. Vandesteeg*

Elizabeth B. Vandesteeg (IL No. 6291426)
Jack O'Connor (IL No. 6302674)
**SUGAR FELSENTHAL GRAIS & HELSINGER LLP**
30 N. LaSalle Street, Suite 3000
Chicago, IL 60602
Telephone: 312.704.9400
Facsimile: 312. 372.7951
evandesteeg@SFGH.com
joconnor@SFGH.com

-and-

Douglas Mintz, Esq. (admitted *pro hac vice*)
**ORRICK, HERRINGTON & SUTCLIFFE, LLP**
Columbia Center
1152 15th Street, N.W.
Washington, D.C., 20005-1706
Telephone: (202) 339-8400
Facsimile: (202) 339-8500

Ayanna Lewis-Gruss (admitted *pro hac vice*)
Peter J. Amend, Esq. (admitted *pro hac vice*)
**ORRICK, HERRINGTON & SUTCLIFFE, LLP**
51 West 52nd Street
New York, NY 10019
Telephone: (212) 506-5000
Facsimile: (212) 506-5151

*Co-Counsel for Appellant/Creditor-Movant
Whitebox Advisors LLC*

11